48946. SIMS v. MAYFLOWER APARTMENTS, INC. et al.

EBERHARDT, Presiding Judge. Mayflower Apartments, Inc. (hereinafter Mayflower) owned an apartment complex and H. A. Minor, its president and sole stockholder, indicated to a realtor, Thomas D. Sims, a desire on the part of the corporation to sell it. Mr. Sims approached C. L. Chandler, Jr., president of C. L. C. Enterprises, Inc. (hereinafter CLC) with a view of selling it. Sporadic negotiations were had on the matter over a span of about four years, which finally resulted in a leasing of the apartments to CLC for a period of ten years, with an option for renewal or extension for an additional period of ten years. The leasing instead of a sale was made because it was believed to result in a tax advantage to one or perhaps both of the parties.

Paragraph 13 of the lease granted to the lessee, CLC, an option to purchase the apartment property, on specified terms, at any time within nine months after the death of H. A. Minor, lessor's president, "provided such death occurs within the term of this lease or within the term of an executed renewal thereof."

Paragraph 9 of the lease provided that the lessor should pay to the realtor, Sims, "as compensation for services rendered in procuring this lease, the first month's rent ($2,166.67), plus 5%

of all rentals thereafter paid by lessee to lessor under this lease or renewal hereof as herein provided."

Paragraph 14 of the lease provided that "In the event of the purchase *of the premises* under any of *the options as herein provided,* Agent (Sims) shall receive a commission on the same consisting of five percent of the first $50,000 plus three percent of the balance of the purchase price, which shall be paid by lessor, *and such Agent's right to commissions on the rentals hereunder shall thereupon terminate."* (Emphasis supplied.)

Some time after the beginning of the lease period Minor felt that rising taxes and costs of operation were making the lease a losing proposition, and sought an arrangement with CLC for adjusting the monthly rentals, and also sought from Sims a waiver of commissions on the adjusted rental if it could be worked out, but Sims refused to do so. At about the same time Chandler, president of CLC, asked Sims about the possibility of his waiving his commission, or of splitting it with his (Chandler's) son in the event the lessee should purchase the property. Sims declined the suggestion.

Thereafter, by direct negotiations between Minor and Chandler, an agreement for the *sale of all of the stock in Mayflower* to CLC was reached, pursuant to which the stock was transferred and CLC became the sole stockholder of Mayflower, which still owned and held title to the apartment complex, its only asset. The transaction occurred October 7, 1970. Thereafter CLC continued to pay and Mayflower continued to receive from it rentals on the property in accordance with the lease agreement, and Mayflower continued to pay to Sims and he continued to collect and retain his commissions on the rentals as was provided in the lease, and this still obtains.

In January, 1972 Sims, the realtor, asserting that the stock transaction had amounted to a sale of the property itself, demanded a commission of the sales price of the stock at the rate provided in the lease contract in the event of a sale of the property by the lessor to the lessee, and when his demand was refused he brought suit against Mayflower and Minor, its prior sole stockholder, and against CLC and its stockholders, C. L. Chandler, C. L. Chandler, Jr. and C. L. Chandler, III, as "successors in interest" to Mayflower, seeking recovery of the commission alleged to be due.

He alleged that Minor and the Chandlers had conspired to defraud him of his commission, and sought a judgment against them for

the amount thereof, plus damages and attorney fees.

Depositions were taken, and the plaintiff, as well as the defendants, moved for summary judgment. The depositions of Minor and Sims, affidavits of Chandler and Sims, documentary evidence, including the lease, and a stipulation of facts, along with the pleadings, were tendered by each movant in support of his motion. After hearing, an order was entered (1) denying the plaintiff's (Sims) motion, (2) sustaining defendants' motion on the merits and dismissing the action.

From this order plaintiff appeals, enumerating error on the denial of plaintiff's motion and the grant of that of the defendants. *Held:*

1. The plaintiff was entitled to recover a commission only under and by virtue of the terms of paragraph 14 of the lease. He specifically sues on the obligation alleged to be created therein.

The lessor's (Mayflower) obligation under that paragraph was to pay the specified commission to Sims "in the event of the purchase (by CLC) under any of the options herein provided." A reading of the lease reveals that the only option granted thereunder to the lessee was as provided in paragraph 13, which *arose only in the event of Minor's death* "within the term of this lease or within the term of an executed renewal thereof." Mr. Minor had not died up to the time of the filing of the suit, as the allegations thereof plainly show. Consequently, on that basis, no viable option existed for exercise in purchasing the property or on which a realtor's commission could be founded. The option provided was for the sale of the premises, not the corporate stock, even in the event of Minor's death. Cf. *Allison & Co. v. McMath Plantation Co.,* 29 Ga. App. 414 (115 SE 916).

The provisions for the payment of commissions on rentals collected and for payment of a sales commission in the event of the sale of the premises under the option contained in the lease are mutually exclusive. The realtor could not, at the same time, be entitled to both, for the contract itself provides for termination of the rental commission upon a sale of the premises.

2. Plaintiff contends that the sale of the entire capital stock of Mayflower by its sole stockholder must be treated as a sale of the property itself under the doctrine of "piercing the corporate veil," but if we should agree, the commission under the contract on which plaintiff seeks a recovery, accrues only if the sale were made "under any of the options as herein provided," and again, since Mr. Minor has not died and the option has not arisen, no obligation to pay the commission has arisen. The case of *Odell*

*v. Wessinger,* 54 Ga. App. 838 (189 SE 367) has no application here. There it was held that an option for purchase by the lessee, affording the realtor a stated commission if exercised while the lease was "in effect," was continued as a part of the lease contract when it was extended for an additional term, and that an exercise of the option during the extended term gave rise to the realtor's right to his commission, and that this was true even though the deed was made to the lessee's wife rather than to him, *at his instance.*

Nor is the case of *Rhyne v. Price,* 82 Ga. App. 691 (62 SE2d 420) controlling here, for there, under a factual situation which is similar in some respects but different in others, the court was testing the petition by a general demurrer. Here, the judgment was rendered, after hearing, on the merits.

Nor is *Erwin v. Wender,* 78 Ga. App. 94 (50 SE2d 244), where one who desired to purchase a tract of land as an investment sought and requested the services of the realtor in locating and arranging the purchase, and could not then form a corporation and purchase through it the property directly from the owner so as to defeat the realtor's right to compensation for his services. Indeed, in the present action it is not contended that the purchaser, CLC, is liable *as purchaser* of the property, for the commission which Sims claims, but on the theory that CLC, having acquired the entire capital stock of Mayflower, is liable as it's "successor-in-interest." Thus, the claim is against it *as seller* of the property, which, of course, it was not.

3. It is urged and there is much reliance by the plaintiff upon the fact that Minor was the president and sole stockholder of Mayflower, and thus that whatever he may have done in selling the stock, the corporation did. This is a non sequitur. Mr. Minor and the corporation are separate entities, though he may have been the president and sole stockholder. *Commonwealth United Corp. v. Rothberg,* 221 Ga. 175, 176 (143 SE2d 741); *Jolles v. Holiday Builders, Inc.,* 222 Ga. 358, 360 (149 SE2d 814); *Thoni Oil Magic Benzol Gas Stations v. Kimsey,* 114 Ga. App. 638 (152 SE2d 576) and citations. See also *Small v. NuGrape Co. of America,* 46 Ga. App. 306, 308 (167 SE 607); *Porter v. Wootten,* 51 Ga. App. 834 (181 SE 866).

Mayflower owned the premises, not the stock, and it was Mayflower that granted the option to buy to CLC, not Minor. It was Minor who sold his stock, not Mayflower. Likewise, it was CLC which bought the stock from Minor, not the Chandlers, and

nobody has purchased or sold the premises which was the subject matter of the lease and of the option. See particularly *Allison & Co. v. McMath Plantation Co.,* 29 Ga. App. 414, supra.

4. Assuming arguendo that the sale of the entire capital stock of Mayflower to CLC amounted to and should be treated as a sale of the leased premises, as plaintiff contends to be the case, plaintiff realtor would still not be entitled to recover as for a sales commission for at least two reasons.

First, the transaction or sale did not take place within nine months after the death of Mr. Minor, who still lives.

Secondly, it appears from the pleadings and the evidence submitted that Mr. Sims has been paid the commissions on rentals as provided in the lease without interruption. These he has kept and he has made no tender of a return thereof, even after he learned of the stock transaction and made demand for a sales commission. When he learned that CLC had purchased and acquired all of the Mayflower stock he was put to an election, by the terms of the contract, as to whether he would continue collection of rental commissions (thereby accepting the position of Mayflower and CLC that there had been no sale of the premises but that the lease continued in effect), or to refuse further acceptance of rental commissions and tender a return of those which may have been collected after the stock transfer but before he learned of it and stand on his position that the sale of the stock amounted to a sale of the premises, entitling him to a sales commission, in which event "the Agent's right to commissions on rentals hereunder shall terminate." By continuing to collect and keep rental commissions after he became aware of the facts he elected to accept the position of Mayflower and CLC as the correct one, waiving any right to assert a claim for a sales commission. He could not collect both at the same time, for, under the contract terms, these rights were, as we have held, mutually exclusive.

Plaintiff's decision to continue collection and retention of rental commissions worked a waiver of any right to urge that there had been a sale of the premises and that he was entitled to a sales commission, for when he did so he was in possession of the facts. *Cartwright v. Bartholomew,* 83 Ga. App. 503, 507 (64 SE2d 323) and cits.; *Eaves v. Georgian Co.,* 47 Ga. App. 37 (4) (169 SE 519), and cits. And a waiver, once made under such circumstances, may not be withdrawn. *Hader v. Eastman,* 124 Ga. App. 548 (184 SE2d 478). This applies, as well, to a claim of fraud. *Green & Co.*

*v. Jackson & Co.*, 66 Ga. 250 (4).

5. There is no civil liability for conspiracy; the liability is for overt wrongful acts of the conspirators. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage done. *Jones v. Spindel*, 113 Ga. App. 191, 192 (1) (147 SE2d 615). Since we conclude that no viable claim has been set forth upon which the plaintiff may recover for commission for a sale of the property, the allegations of conspiracy among the individual defendants do not give rise to such a claim. *Cook v. Robinson*, 216 Ga. 328 (4) (116 SE2d 742). And see *National City Bank of Rome v. Graham*, 105 Ga. App. 498 (125 SE2d 223); *Candler v. Clover Realty Co.*, 125 Ga. App. 278 (187 SE2d 318).

The denial of plaintiff's motion for summary judgment and the grant of the defendant's motion were proper.

*Judgment affirmed. Pannell and Evans, JJ., concur.*

ARGUED JANUARY 14, 1974 — DECIDED JANUARY 29, 1974.

*Harland, Cashin, Chambers & Parker, Terrill A. Parker, T. Jackson Bedford, Jr.,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, John J. Dalton, Robert H. Forry, Dunaway & Haas, George A. Haas,* for appellees.